# FIRST NATIONAL BANK OF FOREST CITY, IOWA v. J. E. MARCELLE AND WALTER N. CARROLL.[1]

June 22, 1923.

No. 23,386.

**No fraudulent representations in quoted letters.**

The defendant Carroll wrote and delivered to the defendant Marcelle two letters, directed to him, stating that there would, upon the reorganization of an oil company, be turned over to him certain collateral trust notes. In procuring a loan from the plaintiff Marcelle delivered to it these letters, upon which the plaintiff claims it relied. It is *held* that these letters did not contain fraudulent misrepresentations and that the plaintiff cannot recover because of them.

Action in the district court for Hennepin county to recover $5,000 for fraudulent representations in procuring a loan. The case was tried before Bardwell, J., who at the close of the testimony granted defendant Carroll's motion to dismiss. From an order denying its motion for a new trial, plaintiff appealed. Affirmed.

*Fowler, Carlson, Furber & Johnson,* for appellant.

*Charles B. Elliott* and *Elliott, Doll & Coursolle,* for respondent.

DIBELL, J.

On August 9, 1919, the plaintiff bank loaned to the defendant Marcelle $5,000. Its claim is that it was induced to make the loan by false representations contained in two letters of the defendant Carroll of date July 24, 1919. It brings this action to recover damages. The defendant Marcelle was not served and does not appear. At the close of the plaintiff's testimony the action was dismissed on the motion of Carroll. The plaintiff appeals from the order denying his motion for a new trial. The question is whether there was at the close of the case evidence tending to establish plaintiff's cause of action.

[1]Reported in 194 N. W. 858.

One of the letters is as follows:

July 24th, 1919.

"Mr. J. E. Marcelle,
Minneapolis, Minnesota.
Dear Sir:

"In response to your request for a line of commitment relative to the handling of the property recently acquired from the Minnesota-Kansas Oil Company.

"The final details of the matter are in process of consummation and will be expedited in every way possible. The new organization will issue its collateral trust notes, secured by first mortgage bonds on the property presently under development.

"As soon as these securities are ready for delivery, under our arrangement with you, there will be turned over to you two thousand ($2,000) dollars, par value, of the collateral trust notes, the bond securing which will be deposited with the Minneapolis Trust Company.

"I understand you wish this assurance to facilitate certain negotiations which you have presently pending and am therefore writing this letter.

"Very respectfully yours,
"Walter N. Carroll."

The other is identical except that the amount is $3,000.

In 1919 the Minnesota-Kansas Oil Company owned certain oil leases in Kansas, and equipment for development and operation, and had explored and developed to some extent. It was in financial trouble. An attachment had been issued and a receiver appointed. This was understood or assumed to be in aid of the attachment. A petition in bankruptcy was pending. The defendant Marcelle was the secretary of the company. Efforts were had by the creditors and the corporation looking to a reorganization. The total indebtedness of the company was something like $125,000. The defendant Carroll along with one Kelly were creditors in the sum of $42,000. They were the largest individual creditors. After the initiation of the matter of reorganization a successful appeal was

made to Carroll and Kelly, who were men of money, to finance it. We now speak of Carroll alone, since Kelly, though interested and co-operating with him, is not a party.

The plan of reorganization contemplated that the creditors, so far as they could be induced to do so, should take bonds in payment of their claims. It was understood that some would refuse, and that it would be necessary to pay them in money. Some had liens and would not join with the general creditors. Some of the asserted claims were disputed, and stood for compromise or litigation. In addition there were expenses attendant upon carrying out the reorganization plan. Carroll was to furnish the new money, estimated at a very considerable sum, and was to have priority of payment of it. The new money was to be a first lien. Carroll acquired the company's title to the property as a step in the reorganization.

The Mercantile State Bank of Minneapolis, a creditor in the sum of $23,000, declined to cooperate unless it was paid $5,000 of its claim in cash. Marcelle, who was active in seeking a reorganization, agreed to pay it. He was without the money. He undertook to get it. In anticipation that he would do so, and to prevent delay in reorganization, Carroll paid the $5,000 to the bank. Then at the request of Marcelle he wrote the two letters which form the basis of this action. He understood that Marcelle was to borrow money and that these two letters were to be used as evidence that he would be entitled to something when the reorganization was an actuality.

It is the contention of the plaintiff that these letters, which were produced to it when it made the loan, contained false representations which induced it to loan the $5,000 to Marcelle. It may be conceded that Marcelle is insolvent and that note worthless.

The letters are to be construed as a whole and in the light of the transaction involved and the purpose to be accomplished. On their face it is apparent that the plan was in process of working out and that a complete statement of it was not given, nor its consummation positively assured. One reading them would understand that there was to be a reorganization of the old corporation; that its property

was to be taken over in some way; that the details were to be worked out; that the trust notes were to be issued at some time in the future by "the new organization," and "as soon as these securities are ready for delivery". Marcelle would be entitled to some of them. No one would have taken the letters as a complete outline of the plan nor an assurance of its success.

We are unable to see evidence of false representations. Carroll had acquired the interest of the company in the oil properties. The rest of the plan was for the future. The details were stated to be in process of consummation, and they were. When the reorganization was effected Marcelle was to have certain securities. If it had been effected according to plan he would have had them. There was litigation in Kansas. It was prolonged beyond anticipation. There was a good faith effort to effect a reorganization. The plan failed of consummation.

It may not be material, but it may be stated to make the story complete, that Carroll eventually perfected title through the trustee in bankruptcy. The original plan of issuing bonds was not carried out. The explanation given is that the particular well which was being drilled, and of which high hopes were entertained, yielded salt water and no oil, and that from then on a reorganization through the issuance of bonds was impossible. They could not be floated. A plan was arranged whereby preferred and common stock was issued, Carroll receiving preferred stock for the new money put in. Whether the plaintiff is entitled to participate, or did participate, in the stock of the new corporation is not shown and is not a matter of consequence in this action.

There is a further claim that Marcelle made active misrepresentations at the time he obtained the loan from the bank. It is sought to charge Carroll upon the theory that Marcelle was his agent. Well towards the close of the case there was evidence which it is claimed tends to show that Carroll conceded that Marcelle was his agent in getting the loan. It is clear to us that such construction cannot be put upon it. Marcelle was not the agent of Carroll and what he said to the bank was not a representation of Carroll.

Order affirmed.